IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 10, 2015 Session

## GREGORY D. ALLEN v. DEBBIE D. ALBEA

**Appeal from the Circuit Court for Madison County**
**No. C12326     Donald H. Allen, Judge**

**No. W2014-01414-COA-R3-CV – Filed April 23, 2015**

This appeal arises from a jury verdict in favor of Plaintiff in the amount of $11,513.78. On appeal, Plaintiff raises several evidentiary issues, contends that juror misconduct requires a new trial, and asserts that the verdict is not supported by the evidence. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

David A. Siegel, Memphis, Tennessee, for the appellant, Gregory D. Allen.

Jay G. Bush, Jackson, Tennessee, for the appellee, Debbie D. Albea.

## OPINION

This lawsuit arises from a January 2012 automobile accident in which a vehicle operated by Plaintiff Gregory D. Allen ("Mr. Allen") was struck from the rear by a vehicle operated by Defendant Debbie D. Albea ("Ms. Albea"). In December 2012, Mr. Allen filed a complaint for damages in the Circuit Court for Madison County. In his complaint, Mr. Allen alleged that he had sustained injuries as a result of the accident and that his injuries were proximately caused by the negligence of Ms. Albea. Mr. Allen prayed for damages in the amount of $250,000, arising from past and future physical pain and mental anguish; lost earning capacity; past and future lost wages; the inability to enjoy life; and past and future medical expenses, including partial past medical expenses in the amount of $28,478.39.

Pursuant to Tennessee Code Annotated § 24-5-113, Mr. Allen itemized his partial medical expenses and attached receipts to his complaint.[1]  Mr. Allen did not seek any recovery for property damage to his vehicle.

Ms. Albea answered in April 2013.  In her answer, Ms. Albea admitted that her vehicle "made contact with the rear of [Mr. Allen's] vehicle[,]" but denied Mr. Allen's allegations of negligence.  She asserted the doctrine of comparative fault as an affirmative defense and objected to the rebuttable presumption proffered by Mr. Allen that the medical expenses set-forth in his complaint were reasonable and necessary.  Ms. Albea demanded a trial by jury, and the trial court set the matter to be tried on February 20, 2014.

On February 10, 2014, Mr. Allen filed a motion to establish as admitted his requests for admissions regarding the reasonableness and necessity of his medical bills, asserting that the requests were served on Ms. Albea in September 2013.  In his motion, Mr. Allen stated that Ms. Albea "responded in some instances, and in other instances failed to address the request at all, responding instead to requests that did not exist."  Mr. Allen also filed a motion in limine to exclude "photographs purportedly depicting minimal or light property damage . . . if offered to prove or suggest that Plaintiff was not injured or was only minimally injured." In his motion, he alleged:

> No biomechanical expert or other expert has been offered to opine that minimal "appearing" property damage is equal to minimal impact and thus no injury or minimal injury.  There are many instances when the appearance of minimal vehicle damage can be misleading as there are a number of ways in which a significant impact can occur without much visible property damage.  It is not Plaintiff's burden to disprove any alleged connection between property damage, impact and injury unless or until the [D]efendant offers competent expert testimony which attempts to establish such a connection.  Defendant has offered no such expert.  The jury should not be permitted to speculate.

Ms. Albea responded to Mr. Allen's motion in limine on February 18, asserting, in relevant part, that any evidence indicating that Mr. Allen was not injured in the accident was relevant and probative.  She asserted that evidence of the lack of damage to the parties' vehicles was circumstantial evidence from which the jury might infer that Mr. Allen was

---

[1]Tennessee Code Annotated §24-5-113(a)(1) provides:
Proof in any civil action that medical, hospital or doctor bills were paid or incurred because of any illness, disease, or injury may be itemized in the complaint or civil warrant with a copy of bills paid or incurred attached as an exhibit to the complaint or civil warrant. The bills itemized and attached as an exhibit shall be prima facie evidence that the bills so paid or incurred were necessary and reasonable.

minimally injured. On February 18, Ms. Albea also responded to Mr. Allen's motion to deem requests for admissions as admitted. In her response, Ms. Albea stated that she admitted in her discovery responses that medical bills attached to Mr. Allen's complaint were genuine but did not admit that the charges were causally connected to the January 2012 accident. She asserted that she adequately responded to Mr. Allen's requests for admissions. She also moved the court for leave to amend and deny several of Mr. Allen's requests for admissions if the court deemed her responses insufficient.

It does not appear from the record transmitted to this Court that Mr. Allen responded to Ms. Albea's motion or that the trial court adjudicated the motion prior to the trial date. Rather, the trial considered the parties' pre-trial motions on the first day of the two- day trial. At a brief hearing before the court, prior to the jury *venire* being brought into the courtroom, the trial court orally denied Mr. Allen's motion to exclude photographs of the parties' vehicles and granted Mr. Allen's oral motion to file the evidentiary depositions of Dr. Earl Stewart ("Dr. Stewart") and Dr. Meghan Marie von Holtz ("Dr. von Holtz"), the senior chiropractor at the chiropractic practice at which Mr. Allen was treated.[2]

The trial court also heard Mr. Allen's motion to deem his requests for admissions admitted. Ms. Albea admitted that Mr. Allen's medical bills were "true charges" and stipulated that the bills were authentic and accurate, but denied that they were "all causally connected to the accident." She repeated her motion for leave to amend her responses if the trial court found them to be insufficient. The trial court stated, "Well, I think the response was sufficient, but I will grant [Ms. Albea's] motion to amend your answers to deny that." Upon questioning by the trial court, Ms. Albea stated that she did not object to Mr. Allen's medical bills being entered into evidence but again denied that they were causally related to the accident.

The jury returned a verdict in favor of Mr. Allen in the amount of $11,513.78, and the trial court entered judgment on the verdict on March 7, 2014. Mr. Allen filed a motion for a new trial, alteration or amendment, or additur on March 26. In his motion, Mr. Allen alleged that "extraneous information was presented to the jury by juror number eleven (11), William Pinson, in violation of the Court's jury instructions and in further violation of Rule 606(b) of the Tennessee Rules of Evidence and the controlling cases in this state." He relied upon and incorporated the affidavit of juror Garrick Lofton in support of this allegation. Mr. Allen also asserted that the verdict was inadequate and against the weight of the evidence in light of the "uncontradicted evidence as to the reasonableness and necessity of the medical

---

[2] Dr. von Holtz was not Mr. Allen's treating chiropractor. Dr. Allen's treating chiropractor apparently left the practice to return to his home state of Arkansas.

charges[]"; that the trial court erred by denying his motion to deem requests for admissions as admitted; that the trial court erred by denying his request at trial to introduce Ms. Albea's responses to his requests for admissions into evidence; that the court erred by allowing the jury to consider "hearsay opinion . . . of Dr. Akin as substantive"; and that the trial court erred by denying his motion to exclude photographs of the vehicles. The trial court denied Mr. Allen's motion following a hearing on June 24, 2014. The trial court entered final judgment in the matter on July 11, 2014, and this appeal ensued.

## Issues Presented

Mr. Allen presents the following issues for our review, as stated in his brief:

1. Was extraneous information presented to the jury by juror number eleven (11), William Pinson, in violation of the Court's jury instructions and in further violation of Rule 606(b) of the Tennessee Rules of Evidence and the controlling cases in this state; and, if so is the [P]laintiff entitled to a new trial?

2. Is the jury verdict inadequate and against the weight of evidence as to the reasonableness and necessity of the medical charges?

3. Did the Court err by denying Plaintiff's motion to deem the [D]efendant's responses to Requests for Admissions as admitted?

4. Did the Court err by denying Plaintiff's request at trial to introduce into evidence the [D]efendant's responses to the requests for admission, both as originally filed and as amended on the morning of trial?

5. Did the Court err in allowing the jury to consider hearsay opinions, conclusions and statements of Dr. Akin as substantive evidence when the [D]efendant did not seek authentication of those records, did not offer or present Dr. Akin as a witness at trial and did not lay a proper foundation for said testimony to be considered as substantive evidence?

6. Did the Court err by denying Plaintiff's request to exclude photographs of the vehicles when no request for property damage was made, liability was admitted by the [D]efendant, and no expert was offered by the defense to provide scientific testimony as to the connection, if any, between property damage and anatomical injury or lack thereof to the human body?

## I. Motion for a New Trial

We turn first to whether the trial court erred by denying Mr. Allen's motion for a new trial on the basis that the jury was presented with extraneous information by one of the jurors. We review a trial court's denial of a motion for a new trial under the abuse of discretion standard. *Ali v. Fisher*, 145 S.W.3d 557, 564–65 (Tenn. 2004). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under this standard, we will not substitute our judgment for the judgment of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,'" and therefore "'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

We begin our discussion by noting that, although the trial court stated in its July 2014 order that Mr. Allen's motion for a new trial was heard on June 24, 2014, the record transmitted to us does not contain a transcript of the June 24 hearing. In his motion for a new trial, Mr. Allen relied on an affidavit of juror Garrick Lofton ("Mr. Lofton") in support of his assertion that extraneous information was presented to the jury in violation of the trial court's jury instructions and Rule 606(b) of the Tennessee Rules of Evidence. In Mr. Lofton's affidavit, which Mr. Allen attached to his motion, Mr. Lofton stated:

> 3. Early during the jury deliberations on Friday [February 21, 2014], one of the jurors informed us that as he was returning from lunch on Thursday, he examined Mr. Allen's vehicle in the parking lot of the courthouse. He then announced that "it appears that Mr. Allen has fixed all the damage to his car himself" or words to that effect. He made this statement in a very sarcastic tone with a smirk on his face and a shrug of his shoulders.
>
> 4. His demeanor, together with his statement to us, suggested to me that this juror wanted the others to know that based on his own personal inspection of Mr. Allen's vehicle, that Mr. Allen could not have been as injured as he claimed if Mr. Allen was able to fix the vehicle himself.
>
> 5. Many of the other jurors began to laugh after this juror made his statements.

5

6. The juror who made these statements is the gentleman who announced the verdict at the end of our deliberations.

In its July 2014 order denying Mr. Allen's motion, the trial court stated that it:

[did] not find that any juror misconduct occurred. Juror William Pinson's alleged comments about repairs to the Plaintiff's vehicle were not extraneous information in light of the fact that information regarding the Plaintiff's property damage and repairs to said damage were already in evidence through both the photographs and testimony of the Plaintiff.

In her brief, Ms. Albea contends that the trial court did not err by denying Mr. Allen's motion for a new trial on the basis of juror misconduct because "the 'extraneous information' alleged to have been presented to the jury by Mr. Pinson . . . was not prejudicial to [Mr. Allen]." She submits that, "[w]hile Mr. Pinson may have interjected what he observed in the parking lot into the jury deliberations," Mr. Allen was not prejudiced because he had testified that the damage to his vehicle was minor and that he had repaired it himself. Ms. Albea also submits that the information presented by Mr. Pinson was not "extraneous." She relies on *Caldararo by Caldararo v. Vanderbilt University*, 794 S.W.2d 738 (Tenn. 1990), for the proposition that "for information to be extraneous, there must be external influences found to be prejudicial to a party in order to warrant a new trial." She asserts that such influences include exposure to news accounts, consideration of facts not admitted into evidence, and communication about the case with non-jurors. Ms. Albea also contends that Mr. Pinson's demeanor and alleged smirk and sarcastic tone constitute his "subjective reaction to the facts" and that they do not constitute grounds for a new trial on the basis of juror misconduct. She finally contends that, because Mr. Lofton had worked with Mr. Allen and knew him prior to trial, this Court "should certainly take into consideration the source of the misconduct allegation[]" on appeal.

We begin our discussion of this issue by noting that, for the purposes of this appeal, Mr. Lofton's affidavit appears uncontroverted. We also note that Mr. Lofton testified before trial that he and Mr. Allen "used to work together more than ten years ago at Procter and Gamble," that they had worked in the same department, and that he had seen Mr. Allen "[s]ometime last year[,]" but was not aware of the automobile accident. We further note that the trial court instructed the jurors not to "conduct [their] own private investigation into this case, although [they might] be tempted to do so." The trial court instructed the jury not to visit the scene of the accident or to consult any source of information and admonished the jury that doing so "would be getting information that is not evidence." It advised, "[a]ny juror who received any information about this case, other than that presented by trial, must notify the Court immediately."

6

We observe that Mr. Lofton did not come forward immediately to inform the court of Mr. Pinson's statements, but that his affidavit was sworn on March 7, 2014. We additionally note that Ms. Albea does not contend that Mr. Pinson's independent examination of Mr. Allen's vehicle and statements to the jury do not constitute juror misconduct in contravention of the trial court's instructions. Rather, Ms. Albea contends that Mr. Pinson's observations were not extraneous in light of the evidence presented at trial and, accordingly, Mr. Pinson's conduct did not result in prejudice to Mr. Allen.

It is well settled that a jury's verdict must be grounded on the evidence that was introduced at trial. *Patton v. Rose*, 892 S.W.2d 410, 413 (Tenn. Ct. App. 1994) (citation omitted). A verdict that is "based on something other than the evidence introduced at trial is improper and should not be allowed to stand." *Id*. "However, in order to be granted a new trial due to such jury misconduct, there must be admissible evidence on the issue." *Id*. Rule 606(b) of the Tennessee Rules of Evidence controls the admissibility of juror evidence. The Rule provides:

> **Inquiry Into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

As a matter of law, juror testimony regarding the jury's deliberations, "including the juror's own internal thoughts, motivations, or emotions[,]" generally is not admissible. *Walsh v. State*, 166 S.W.3d 641, 647 (Tenn. 2005) (citations omitted). Rule 606(b) is based on the common-law rule prohibiting the admission of a juror's testimony to impeach the jury's verdict and on the common-law exception for testimony concerning extraneous influences. *Id.* at 646 (citation omitted). It "promotes full and frank discussion in the privacy of the jury room and protects jurors from harassment by the losing party who might seek to impeach the verdict." *Id*. The "overarching purpose" of Rule 606(b) "is to protect the integrity of the jury's deliberative process." *Id*.

Under Rule 606(b), a juror may testify in order "to establish the *fact* of extraneous

7

information or improper influence on the juror[.]" *Id.* at 649 (emphasis added). The Tennessee Supreme Court held in *Walsh*, however, that juror testimony "concerning the effect of such information or influence on the juror's deliberative processes" is not admissible. *Id.* Additionally, we have held that a trial court abuses its discretion when it admits juror testimony regarding the effect of extraneous information on the jury's decision-making process. *Gaines v. Tenny*, No. E2008-02323-COA-R3-CV, 2010 WL 199628, at *2 (Tenn. Ct. App. 2010) (citing *Walsh*, 166 S.W.3d at 649)).

"'[E]xtraneous information' is information from a source outside the jury." *Caldararo by Caldararo v. Vanderbilt University*, 794 S.W.2d 738, 742 (Tenn. App. 1990) (citing *State v. Coker*, 746 S.W.2d 167, 171 (Tenn. 1987)). The *Caldararo* court noted:

> External influences that could warrant a new trial *if found to be prejudicial* include: (1) exposure to news items about the trial, (2) consideration of facts not admitted in evidence, and (3) communications with non-jurors about the case. Internal influences that are not grounds to overturn a verdict include: (1) discussions among jurors, (2) intimidation or harassment of one juror by another, (3) a juror's personal experiences not directly related to the litigation, and (4) a juror's subjective thoughts, fears, and emotions.

*Id.* (emphasis added) (internal citations omitted). Thus, a juror's notes taken during trial, for example, are not considered extraneous information and use of such notes during jury deliberations is not considered outside influence. *Id.* at 743. Additionally, while a juror's personal experiences that are unrelated to the litigation do not constitute external information, a juror's personal experiences that relate directly "to the parties or to the events directly involved in the litigation may[.]" *Id.* at 744 (citations omitted). "[E]xtraneous information could enter the jury room through the mouth of a juror[]" if, for example, the juror conducts independent research or performs his own tests. *Id.* n.7 (citation omitted). "[T]he effect of anything upon any juror's mind or emotions" is not admissible, however. *State v. Adams*, 405 S.W.3d 641, 651 (Tenn. 2013) (quoting Tenn. R. Evid. 606(b)). Pressure and intimidation by other jurors also are not extraneous information or outside influence. *State v. Hailey*, 658 S.W.2d 547, 553 (Tenn. Crim. App. 1983).

The party seeking a new trial on the ground of juror misconduct bears the burden of proving misconduct by a preponderance of the evidence. *Worley v. Rarity Communities, Inc.*, No. M2012–01373–COA–R3–CV, 2013 WL 3958444, at *1 (Tenn. Ct. App. July 29, 2013) (perm. app. denied Dec. 11, 2013). In this case, that portion of Mr. Lofton's affidavit regarding Mr. Pinson's statement to the jury is admissible with respect to the fact of alleged extraneous information. However, that portion of his affidavit with respect to the effect, or intended effect, of that information is not admissible. See *Walsh*, 166 S.W.3d at 649.

8

Mr. Pinson clearly acted in contravention of the trial court's instructions to the jury in this case. However, we agree with Ms. Albea that his statement regarding the fact that Mr. Allen appeared to have repaired the damage to his vehicle himself was not extraneous information in light of Mr. Allen's testimony at trial that he did, in fact, repair the damage to his vehicle himself. When the same facts as those being attacked is put into evidence and presented to the jury by a party or his counsel, that information cannot be said to be extraneous. *State v. Hailey*, 658 S.W.2d 547, 553 (Tenn. Crim. App. 1983). We have held that "[e]xtraneous information that could warrant a new trial if found to be prejudicial includes 'consideration of facts not admitted in evidence.'" *Granda v. Warlick*, No. M2005-01248-COA-R3-CV, 2006 WL 3071227, at *2 (Tenn. Ct. App. Oct. 27, 2006)(quoting *Caldararo*, 794 S.W.2d at 742 (citing *Gov't of Virgin Islands v. Gereau*, 523 F.2d 140, 149-150 (3d Cir.1975), cert. denied, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976))). Additionally, "[i]t is for the court to determine 'whether there is a reasonable possibility that the communication altered the verdict.'" *Collins v. Arnold*, No. M2004–02513–COA–R3–CV, 2007 WL 4146025, at *32 (Tenn. Ct. App. Nov. 20, 2007) (perm. app. denied April 14, 2008) (quoting *Walsh*, 166 S.W.3d at 649 (quoting *Haugh v. Jones & Laughlin Steel Corp.*, 949 F.2d 914, 917 (7th Cir.1991))).

Our supreme court recently has observed that the risk that jurors will engage in "extra-judicial communication . . . with third parties" and "conduct research and investigate the law and facts on their own[]" has "exponentially increased" in light of new technologies. *State v. Smith*, 418 S.W.3d 38, 46-47 (Tenn. 2013). In the context of impermissible communication between a juror and a third-party, the *Smith* court stated:

> Not every extra-judicial communication between a juror and a third-party requires the court to disqualify the juror, declare a mistrial, or grant a new trial. These remedies are required only when the extra-judicial communication is prejudicial to the defendant and is not harmless error. This is true even when the non-juror is a party, a witness, or someone otherwise interested in the case.

*Id*. at 49.

We find Mr. Pinson's disregard of the trial court's order to be highly offensive and cannot agree with the trial court that *no* juror misconduct occurred in this case. However, a juror's disregard of a trial court's instruction, standing alone, does not necessitate a new trial. In *State v. Frazier,* the Court of Criminal Appeals held that, notwithstanding the defendant's allegation that the jury disregarded the trial court's instruction not to engage in deliberation prior to the conclusion of proof, the trial court properly denied the defendant's motion for a new trial. *State v. Frazier*, 683 S.W.2d 346, 353 (Tenn. Crim. App. 1984). The *Frazier* court held that, because "[t]he alleged discussion by the members of the jury [did] not

9

constitute 'extraneous prejudicial information' or 'outside influence[,]' evidence of the alleged misconduct was not admissible to demonstrate grounds for a new trial. *Id*.

In *Owens v. Methodist Health Care Systems*, the plaintiff moved for a new trial on the basis of alleged omissions in the jury instructions and alleged juror misconduct. *Owens v. Methodist Health Care Sys.*, No. 02A019704CV00089, 1999 WL 360562, at *2 (Tenn. Ct. App. June 7, 1999). Plaintiff alleged, in relevant part, that the jurors communicated with non-jurors about the case and that the jury considered matters that were not in evidence. *Id*. We noted that, under *Caldararo*,

> consideration of evidence that has not been admitted and communications with non-jurors are external influences that might justify a new trial. This is true, however, only if such events are found to be prejudicial.

*Id*. at *6 (citing *see Caldararo*, 794 S.W.2d at 742). We determined that the alleged juror misconduct in that case "was clearly harmless because" the information allegedly presented to the jury through a juror's communication with a third party was not prejudicial to the plaintiff. We stated:

> Despite the trial court's strong statements and obvious displeasure at the juror's disregard of its instructions, the trial court expressly denied Owens' motion for a new trial even though the juror's misconduct was at issue in that motion. We find no error in the trial court's decision.

*Id*.

Similarly, the issue presented by this appeal is whether the juror misconduct alleged by Mr. Allen provided the jury with extraneous information that was prejudicial to Mr. Allen. Notwithstanding Mr. Pinson's disregard of the trial court's instructions, Mr. Pinson introduced no information not already placed before the jury by Mr. Allen. Thus, Mr. Pinson's statement did not constitute "extraneous prejudicial information" under Rule 606(b). Further, in light of the totality of the evidence, we find no reasonable possibility that Mr. Pinson's statement altered the verdict. Accordingly, we find no error on the part of the trial court and affirm its denial of Mr. Allen's motion for a new trial.

## II. Admissibility of Photographs

We turn next to whether the trial court erred by denying Mr. Allen's motion in limine to exclude photographs of the parties' post-collision vehicles from the evidence. We review a trial court's decision to admit or exclude evidence, including a ruling following a motion in limine, under the abuse of discretion standard of review discussed above. *Dickson v. Kriger*,

374 S.W.3d 405, 408 (Tenn. Ct. App. 2012) (citations omitted).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "'In other words, evidence is relevant if it helps the trier of fact resolve an issue of fact.'" *Indoccio v. M & A Builders, LLC*, 372 S.W.3d 112, 117 (Tenn. Ct. App. 2011) (quoting Neil P. Cohen, et al., *Tennessee Law of Evidence* § 4.01[4], at 4–9 (5th ed.2005)). Evidence that "is not relevant is not admissible." Tenn. R. Evid. 402. Thus, if evidence is relevant, it is admissible absent another rule excluding it. *E.g., Miller v. Moretz*, No. E2013–01893–COA–R3–CV, 2014 WL 3056061, at *8 (Tenn. Ct. App. July 7, 2014). Under Rule 403 of the Tennessee Rules of Evidence, "relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. The weight to be given to the evidence is a question for the jury. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997).

Upon review of the record in this case, we cannot say the trial court abused its discretion by denying Mr. Allen's motion in limine to exclude photographs of the parties' vehicles from admission into evidence. It is undisputed in this case that the parties' vehicles sustained minimal damage. Additionally, as noted above, Mr. Allen testified with respect to the damage to his vehicle and stated that he repaired the damages himself. The weight to be given to the photographs introduced by Ms. Albea, and to Mr. Allen's testimony, was a matter to be determined by the jury. We affirm on this issue.

### III. Requests for Admissions

We turn next to whether the trial court erred by denying Mr. Allen's motion to establish as admitted his requests for admissions regarding the reasonableness and necessity of his medical bills. Upon review of the record, we observe that Ms. Albea did not fail to respond to Mr. Allen's request for admissions. Rather, she stated that she was unable to either admit or deny many of Mr. Allen's requests. We also observe that Mr. Allen's requests essentially asked Ms. Albea to admit that his medical bills were related to the January 2012 collision and that they were reasonable and necessary. In her responses, Ms. Albea stated that she could not provide an expert opinion with respect to whether Mr. Allen's medical bills were causally related to the collision or with respect to whether they were reasonable and necessary. Upon review of the proceedings before the trial court, we note that the trial court perceived Ms. Albea's responses to be denials of Mr. Allen's claim. The trial court queried "Why are we here then? Sure [she's] denying it."

11

Rule 36.01 of the Tennessee Rules of Civil Procedure provides, in relevant part:

> If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.

This Court has held that "the clear language of Tenn. R. Civ. P. 36 provides the trial court discretion to allow withdrawal or amendment of matters deemed admitted because of a party's failure to timely provide answers to a request for admission, including when no response has been provided by a party who has received a request for admission." *Meyer Laminates (SE), Inc. v. Primavera Distributing, Inc.*, 293 S.W.3d 162, 166 (Tenn. Ct. App. 2008). Under the abuse of discretion standard of review discussed above, we cannot say the trial court abused its discretion by allowing Ms. Albea to amend her responses in this case.

We similarly find no abuse of discretion on the part of the trial court in denying Mr. Allen's request at trial, at the close of Plaintiff's proof, to introduce Ms. Albea's responses to his requests for admissions into evidence. Plaintiff's counsel had an opportunity to examine Ms. Albea at trial and to introduce expert testimony into evidence. The exclusion of Ms. Albea's responses that, as a lay person and without an expert medical opinion, she could neither admit nor deny Mr. Allen's assertions that the entirety of his medical bills were related to the collision and were reasonable and necessary did not prejudice Mr. Allen in light of the entirety of the testimony in this case.

## IV. Testimony of Dr. Akin

We turn next to Mr. Allen's assertion that the trial court erred by allowing the jury to consider what Mr. Allen contends are the hearsay opinions and conclusions of Dr. Akin. Dr. Akin was not a witness at trial but treated Mr. Allen at the Semmes-Murphey Clinic on referral by Mr. Allen's treating physician, Dr. Earl Stewart ("Dr. Stewart"). As noted above, the admission of evidence is within the broad discretion of the trial court, and we will not disturb the trial court's ruling absent an abuse of discretion. *Dickson v. Kriger*, 374 S.W.3d 405, 408 (Tenn. Ct. App. 2012) (citations omitted).

In his brief, Mr. Allen submits that Ms. Albea introduced Dr. Akin's opinions through her cross-examination of Dr. Stewart. He asserts that, over his objection, counsel for Ms. Albea was permitted to read into the record portions of Dr. Stewart's deposition regarding Dr. Akin's records and the conclusions contained therein. Mr. Allen asserts that Dr. Stewart testified that Dr. Akin stated that an MRI taken of Mr. Allen's neck did not reveal any "acute changes that he could directly relate to an auto accident, and that ultimately Dr. Akin did not think that surgery would be necessary." He further submits that, in contravention of Rule 703 of the Tennessee Rules of Evidence, Ms. Albea failed to show that Dr. Stewart relied on

Dr. Akin's opinion in formulating his own opinions. Mr. Allen submits, "The result was the same as if the records had been introduced as substantive evidence." He relies on *Holder v. Westgate Resorts, Ltd.*, 356 S.W.3d 373 (Tenn. 2011), for the proposition that the trial court allowed Dr. Stewart to testify as the "mouthpiece" of Dr. Akin, that Dr. Stewart's testimony regarding Dr. Akin's records was hearsay, and that the trial court erred by allowing the testimony to come in as substantive evidence.

Ms. Albea, on the other hand, asserts that Tennessee case-law permits a treating physician to give an expert opinion based on hearsay reports and tests that were received in the aid of diagnosis and treatment. She asserts that Mr. Allen questioned Dr. Stewart on direct examination with respect to Dr. Akin's opinions and diagnosis and that Mr. Allen himself laid the foundation for Dr. Stewart's testimony. Ms. Albea submits that Dr. Stewart testified on direct examination that he requested Mr. Allen's records from the Semmes-Murphey Clinic and that he discussed Dr. Akin's findings, and also the findings of Semmes-Murphey neurosurgeon Dr. Rowland, with Mr. Allen during the course of his treatment.

We begin our discussion of this issue by noting that *Holder* did not involve physician testimony or medical reports received by a testifying physician during the course of treatment, and that it was decided on a former version of Rule 703 of the Tennessee Rules of Evidence. *Holder*, 356 S.W.3d at 378. Rule 703 currently provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Generally, the opinion of an expert "must be based on facts in evidence." *Evans v. Wilson*, 776 S.W.2d 939, 942 (Tenn. 1989). However, "a treating physician [is permitted] to give an expert opinion based on hearsay reports and tests received in aid of diagnosis and treatment of a patient. It is an exception to the traditional view excluding expert opinions based on the hearsay reports of others." *Id.* (citing See, D. Paine, *Tennessee Law of Evidence* § 176 (1974)). The *Evans* court observed, "the reliability and trustworthiness of the hearsay [medical] reports and tests [are] established by their use by the treating physician in treatment and diagnosis." *Id.*

13

In this case, Mr. Allen laid the foundation for the reports of the Semmes-Murphey physicians when he questioned Dr. Stewart on direct examination. We observe that, on direct examination by Mr. Allen, Dr. Stewart testified that Mr. Allen first presented to him on January 15, 2012, complaining of neck and back pain after a motor vehicle accident. Dr. Stewart testified that Mr. Allen did not present any medical history, that he diagnosed "cervical and lumbar strain secondary to MVA[,]" and that he recommended physical therapy and medications. Dr. Stewart testified that after Mr. Allen's pain appeared to worsen, he recommended a neurosurgical evaluation at the Semmes-Murphey Clinic in Memphis and that Mr. Allen went for an MRI on March 6, 2012.

We observe that, on direct examination by Mr. Allen, Dr. Stewart testified that he "requested the records from the specialist[,]" Dr. Akin at the Semmes-Murphey Clinic. We additionally observe that Mr. Allen's counsel provided Dr. Stewart with several pages of Dr. Akin's records, questioned Dr. Stewart regarding Dr. Akin's findings, and Dr. Stewart testified that Dr. Akin's "impression was a cervical sprain, degenerative disk disease, lumbar degenerative disk disease and lumbar sprain." We finally observe that Dr. Stewart relied on Dr. Akin's report in concluding that the 2012 accident aggravated Mr. Allen's pre-existing degenerative disk disease.

Upon review of the testimony, it is clear that Dr. Stewart received and relied on Dr. Akin's reports in the course of his treatment of Mr. Allen. We find no abuse of discretion on the part of the trial court and affirm on this issue.

## V. Adequacy of the Jury Verdict

We turn finally to Mr. Allen's assertion that the jury verdict in this case was inadequate and against the weight of the evidence. Mr. Allen submits that "[t]he uncontroverted proof at trial established the existence of medical bills totaling $27,812.94." He asserts that "[o]ne can only guess how the jury arrived at their verdict or what evidence they considered or rejected in arriving at their verdict."

Ms. Albea, on the other hand, submits that "[t]he jury clearly did not find Mr. Allen to be credible[.]" She further submits that Mr. Allen's assertion that the evidence of medical damages was uncontroverted "discounts all the other evidence presented that calls into question the veracity of [Mr. Allen's] injury claims." She contends that the jury heard testimony from Mr. Allen that he had a prior history of lower back pain and that he did not disclose his prior history to Dr. Stewart or in his own deposition testimony. Ms. Albea asserts that, although Dr. Stewart and Dr. Meghan Marie von Holtz (Dr. von Holtz), a chiropractor who treated Mr. Allen, were expert witnesses, their opinions were based on the medical history provided to them by Mr. Allen. She asserts that the jury verdict is supported

14

by the evidence in this case.

On appeal from a jury trial, the appellate courts will not set aside the jury's findings of fact unless there is no material evidence to support the verdict. *Ferguson v. Middle Tennessee State Univ.*, 451 S.W.3d 375, 380 (Tenn. 2014); Tenn. R. App. P. 13(d). This Court will not re-weigh the evidence presented to the jury but will take the strongest view possible of the evidence in favor of the prevailing party and discard evidence to the contrary. *Id*. We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id*.

The credibility of witnesses, the weight and value to be given to the evidence, and the resolution of the factual disputes presented by the evidence are within the province of the jury. *Ferguson*, 451 S.W.3d at 380. (citations omitted). Additionally, the jury may "disregard the testimony of a witness it does not find to be credible." *Id*. at 383 (citations omitted). On questions of fact, the jurors may "use their common sense and rely on everyday life experiences when evaluating issues." *Id*. (footnote and citations omitted). The amount of the damages to be awarded in a personal injury case is primarily a matter to be determined by the jury. *Brown v. Null*, 863 S.W.2d 425, 430 (Tenn. App. 1993) (quoting *Yellow Cab Co. of Nashville v. Pewitt*, 316 S.W.2d 17 (Tenn. 1985)). Although the law "can say that [a] plaintiff is entitled to reasonable compensation for bodily injuries . . . [i]t cannot furnish any fixed or certain standard for measuring such damages, but must leave the amount of the judgment [to] the jury[.]" *Id*. (quoting *Yellow Cab*, 316 S.W.2d 17).

The matter to be determined by the jury with respect to Mr. Allen's medical bills was not whether the charges were incurred but the extent to which they were reasonable and necessary and caused by the accident in light of the totality of the evidence. Upon review of the record, we observe that Dr. Stewart testified that the majority of Mr. Allen's medical bills were reasonable and necessary. We also observe that, on cross-examination, Dr. Stewart testified that he is a family practitioner but is not Mr. Allen's primary care physician and that he did not inquire into whether Mr. Allen had a history of back or neck pain. Dr. Stewart further testified that he had not reviewed the medical records of Mr. Allen's primary care physician, that Mr. Allen did not discuss the severity of the collision with him, that Mr. Allen did not provide any information about the accident "[o]ther than the fact that the vehicle he was in was rear-ended," that the information he received from Mr. Allen was subjective, and that he was not aware that Mr. Allen had been previously treated for back pain. Dr. Stewart testified that Mr. Allen did not reveal that he had been injured in an automobile accident in 2005, that Dr. Akin had opined that Mr. Allen's neck symptoms did not correlate with the results of the MRI and that Mr. Allen did not require surgery. He further testified that Dr. Akin's notes indicated that Dr. Akin declined to provide Mr. Allen with a work excuse. To a considerable degree the jury's decision turned on its assessment of credibility and its

determination of the extent to which Mr. Allen's medical condition was caused by the 2012 accident. Upon review of the record, we find there is material evidence to support the jury verdict in this case. We accordingly affirm.

## Holding

In light of the foregoing, we affirm the trial court's judgment confirming the jury verdict in favor of Mr. Allen in the amount of $11,513.78. Costs on appeal are taxed to the Appellant, Gregory D. Allen, and to his surety, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment; the collection of costs; and further proceedings as are necessary and consistent with this opinion.

_____
ARNOLD B. GOLDIN, JUDGE