IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 8, 2022 Session

## LOUISE FAULKNER ET AL. v. NATIONSTAR MORTGAGE LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT-005376-14  Mary L. Wagner, Judge**

_____

### No. W2020-01148-COA-R3-CV

_____

This case involves a controversy surrounding certain real property located in Memphis. The trial court entered summary judgment in favor of the Defendant on most claims, and after a jury trial and verdict in favor of the Defendant, the remaining claim was also dismissed. Although the homeowner of the property raises a number of issues in this appeal, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Louise Faulkner.

Lauren Paxton Roberts, Nashville, Tennessee, for the appellee, NationStar Mortgage, LLC.

### MEMORANDUM OPINION[1]

### BACKGROUND AND PROCEDURAL HISTORY

Louise and Earnest Faulkner purchased the real property at issue several decades ago via a deed recorded in December 1970. In April 2004, the Faulkners took out a mortgage loan and executed a deed of trust on the property. Sometime after the inception

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

of this loan, the Faulkners received notice that all payments toward their loan were to be directed to Nationstar Mortgage, LLC ("Nationstar").

Of note, in August 2011, Nationstar included the property at issue in a bulk sale of property to an entity named Blue Spruce Entities. Following this sale, in October 2011, the Faulkners witnessed a man installing a sign in their yard. The Faulkners inquired into the situation, and the man then handed them a document indicating that their home was no longer owned by them and that an eviction was supposedly pending. Sometime thereafter, the Faulkners received a stack of papers indicating that they did not own the property but that they could remain by entering into an installment purchase land contract.

In addition to the foregoing, the Faulkners' daughter called Nationstar in October 2011. During the call, the Faulkners' daughter heard someone state that her parents' home had been inadvertently sold. Upon this discovery, the Faulkners filed a consumer complaint with the Tennessee Department of Financial Institutions on December 15, 2011. Subsequently, Nationstar sent the Faulkners a letter indicating that it had released their mortgage lien and designated their mortgage obligation as satisfied. Nationstar has submitted that the prior inclusion of the Faulkners' property in the bulk sale was inadvertent and due to a coding error. During the trial that occurred in this case, a Nationstar representative testified that "[o]nce we learned of the error that had occurred . . . we returned [the money we had received for the sale of the property] to Blue Spruce Entities." There does not appear to be any dispute that the Faulkners never lost possession of the property. In fact, Ms. Faulkner has specifically acknowledged that she "had never" even had an eviction proceeding pending against her.

The present litigation was commenced when the Faulkners filed a complaint against Nationstar on December 23, 2014, in the Shelby County Circuit Court. Eventually, as articulated and alleged through a subsequently-filed amended complaint, the Faulkners interposed a number of distinct claims for relief, including for "Wrongful Foreclosure"[2] and "Fraudulent Conversion." Mr. Faulkner died during the pendency of the litigation, but an order of substitution was later entered pursuant to Tennessee Code Annotated section 20-5-104 permitting Ms. Faulkner "to proceed on behalf of the deceased."

Following the filing of competing motions for summary judgment, most of the claims asserted in the case were initially resolved in Nationstar's favor. Despite the trial court's grant of partial summary judgment, further proceedings remained to be conducted in relation to the aforementioned claims for wrongful foreclosure and fraudulent conversion.

In September 2018, Nationstar submitted motions in limine for the court's

---

[2] The claim itself outlined how Nationstar sold the Faulkners' home "prior to conducting a proper foreclosure sale."

consideration in preparation for trial. Nationstar requested that the court exclude all testimony regarding the Faulkners' health issues, noting that claims for infliction of emotional distress had already been dismissed. Similarly, Nationstar requested that the court exclude any testimony that the actions by Nationstar caused or contributed to the death of Mr. Faulkner. This evidence, Nationstar submitted, was not probative of what remained to be decided in the case. Ms. Faulkner responded to Nationstar's motions in limine the following August by arguing that "damages for Wrongful Foreclosure include damages for pain and suffering, which would make testimony regarding Defendant's impact on their physical and mental well-being necessary, and relevant." Subsequently, in a memorandum filed in advance of a scheduled October 2019 pre-trial conference, Ms. Faulkner again shed light onto the nature of the damages she wanted to pursue, specifically arguing, among other things, that the wrongful foreclosure claim allowed for emotional damages. As her counsel later emphasized at the pre-trial conference, "[t]he primary damages we have in the wrongful foreclosure [claim] would be the emotional damages and potentially punitive damages."

Nationstar's counsel, who previously had understood Ms. Faulkner to be proceeding on a contract-based theory of wrongful foreclosure, objected to the availability of emotional damages given this understanding. Yet, Nationstar's counsel further argued that if Ms. Faulkner was proceeding with a tort claim, "it never should make it to the point of damages because the [three-year] statute of limitations should bar it altogether." This statute of limitations argument, although not direct by way of a statutory reference by counsel at the time of the pre-trial conference, was clearly based on Tennessee Code Annotated section 28-3-105, which provides for a three-year limitation period for "[a]ctions for injuries to personal or real property." Tenn. Code Ann. § 28-3-105(1). Of note, when the trial court specifically inquired of Ms. Faulkner's counsel as to the nature of his client's claim, counsel responded as follows: "This is an injury to property." As discussed below, the two sides in this case ultimately agreed in the trial court that a three-year limitation period governed the asserted wrongful foreclosure claim.

At the end of the pre-trial conference, following counsels' arguments and clarification of the parties' respective positions, the court invited both sides to, if they wished, file any additional "dispositive motions, Rule 56 motions." Heeding the court's invitation, and in light of the colloquy that had taken place among counsel and the court during the pre-trial conference, Nationstar filed a motion for partial summary judgment based on its assertion that counsel for Ms. Faulkner had "clarified [at the pre-trial conference] . . . that he intended to pursue his wrongful foreclosure claim as an action sounding in tort." In urging dismissal of the wrongful foreclosure claim, Nationstar specifically contended the claim was barred by the three-year statute of limitations codified at Tennessee Code Annotated section 28-3-105(1), arguing that the undisputed facts showed that the Faulkners had been aware of the bulk sale involving their property more than three years before the commencement of this action. In a contemporaneously-filed supporting memorandum, Nationstar not only advocated that the statute of limitations

barred the wrongful foreclosure claim, it also reiterated its earlier call for an exclusion of any testimony regarding emotional damages, noting that, as it concerned the conversion claim, "the proper measure of damages . . . [is] the fair, reasonable market value of the property at the time and place of the conversion."

Ms. Faulkner did not disagree with Nationstar's framing of the legal theory she was attempting to pursue. Indeed, jettisoning any reliance on a contractual right to recovery at the future trial,[3] Ms. Faulkner stated in response to Nationstar's motion that she was "proceeding under Wrongful Foreclosure as a tortious injury to property" and that a three-year statute of limitations did, in fact, apply to the claim. She ultimately argued against the dismissal of her wrongful foreclosure claim as urged by Nationstar, however, because she disagreed with Nationstar's assessment that the facts evidenced the claim as time-barred.

Prior to trial, the trial court entered an order granting Nationstar's motions in limine and ruling that all proof of emotional distress would be excluded from evidence. The court also entered an order granting Nationstar's new motion for partial summary judgment. The court noted that its prior summary judgment order on the wrongful foreclosure claim was subject to revision as an interlocutory order. In granting summary judgment on the wrongful foreclosure claim, the court concluded that the claim was asserted outside the limitations period because the facts demonstrated that the Faulkners knew of their injuries and the identity of the Defendant no later than October 2011.

Following a trial, the jury returned a verdict finding that Nationstar did not convert the Faulkners' real property. A judgment was then subsequently entered in Nationstar's favor dismissing the claim for fraudulent conversion. Although Ms. Faulkner moved for a new trial, or in the alternative for additional findings of fact, this motion was denied by the trial court. The present appeal followed.

## STANDARD OF REVIEW

As is evident from the ensuing discussion, the primary issues in this appeal involve decisions pertaining to the exclusion of evidence, the propriety of jury instructions, as well

---

[3] Ostensibly, Ms. Faulkner pivoted away from any reliance on a contractual right to recovery for the asserted allegations of wrongful foreclosure in light of the previous representations made by her counsel concerning the nature of the damages she wanted to recover, i.e., emotional and punitive damages. *See Johnson v. Woman's Hosp.*, 527 S.W.2d 133, 141 (Tenn. Ct. App. 1975) (noting that although Tennessee has, for instance, "long permitted the recovery of substantial damages for mental suffering alone in the breach of a contract to bury or embalm a body," the "general rule" is that damages for mental anguish are "not recoverable in a contract action," nor are punitive damages, "since it is not in tort and there is no physical injury"); *In re Jenkins*, 488 B.R. 601, 617–18 (Bankr. E.D. Tenn. 2013) (noting that "a claim for breach of contract alone will not support emotional distress damages").

as the partial grant of summary judgment in Nationstar's favor. Concerning the scope of the evidence that the jury considered in this matter, "[w]e review a trial court's decision to admit or exclude evidence, including a ruling following a motion in limine, under the abuse of discretion standard of review." *Allen v. Albea*, 476 S.W.3d 366, 377 (Tenn. Ct. App. 2015). As for jury instructions, "[w]hether a jury instruction is erroneous . . . is . . . subject to de novo review." *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 699 (Tenn. 2011). An instruction "will not be invalidated if it 'fairly defines the legal issues involved in the case and does not mislead the jury,'" *Id.* (quoting *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)), and the "judgment of a trial court will not be set aside based on an erroneous jury instruction unless it appears that the erroneous instruction more probably than not affected the judgment of the jury." *Id.* "When issues involving the jury charge are raised on appeal, we review the jury charge in its entirety and consider it as a whole in order to determine whether the Trial Court committed prejudicial error." *Fletcher v. Bickford*, No. E2000-01020-COA-R3-CV, 2001 WL 12224, at *9 (Tenn. Ct. App. Jan. 5, 2001). We review the trial court's grant of summary judgment de novo. *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) ("Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness.").

## DISCUSSION

Ms. Faulkner's brief raises three general issues for our review. We will address each of her articulated concerns in turn.

*Adverse Credit Action Evidence*

As phrased in her appellate brief, Ms. Faulkner's first issue asks "whether the Trial Court erred when it excluded evidence, damages, and jury instructions related to fraud when it prevented Appellants from arguing or putting on evidence that Appellee intentionally caused Appellants to have adverse credit actions against them and left them in that status." As best as we understand the accompanying argument, Ms. Faulkner generally submits that evidence related to "adverse credit actions" should have been permitted at the trial of this matter and that certain jury instructions should have been given. Her concern with jury instructions appears to relate squarely to the subject of damages, i.e., that the jurors should have been given an "option . . . to consider damages caused by the adverse credit reporting."

We are largely confused with Ms. Faulkner's focus on "adverse credit actions" in this appeal given that the claim tried in this matter was for fraudulent conversion. In an attempt to support her position that evidence of adverse credit actions should have been considered, Ms. Faulkner first argues that such evidence is relevant to her damages. We respectfully do not understand this argument given that the "ordinary measure of damages for conversion is the value of the property converted at the time and place of conversion."

- 5 -

*Lance Prods., Inc. v. Com. Union Bank*, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988). Evidence of adverse credit actions is not relevant to this issue. In any event, despite Ms. Faulkner's contention that evidence of adverse credit actions is somehow relevant to *damages* for conversion and should have been considered on that topic, it should be noted that the jury returned a verdict finding that no conversion had, in fact, occurred.[4]

Ms. Faulkner's argument about jury instructions is, as noted above, also specifically related to the subject of damages given her statement that the jury should have been given an option "to consider damages caused by the adverse credit reporting." Again, we fail to see how this relates in any way to the claim at trial, which was for fraudulent conversion. Ms. Faulkner's own phrasing in her argument would actually appear to belie any notion that she is seeking instructions on damages related to conversion insofar as she contends that the jury should have been given an option to consider damages "caused by the adverse credit reporting." Although Ms. Faulkner evidently surmises there to be some connection between a claimed conversion and damages in the form of adverse credit reporting, such an alleged connection would ultimately be of no consequence here if it somehow existed. Indeed, even assuming *arguendo* that additional jury instructions on damages should have been given in reference to the claim that was tried, we note once more that the jury returned a verdict finding that no conversion had occurred. As Nationstar has argued, "[f]ailing to instruct the jury about extra damages it *could have* awarded had it reached the opposite conclusion is the definition of a harmless error."

To briefly recap our discussion of this first issue, although Ms. Faulkner submits that the trial court erred by preventing her from "arguing or putting on evidence that [Nationstar] intentionally caused [her] to have adverse credit actions," the adverse credit actions she references are not relevant to the fraudulent conversion claim that was the subject of trial. Because there is, in our view, clearly no reversible error connected to Ms. Faulkner's first raised issue, we shift our attention to the remaining issues on appeal.

*Summary Judgment*

Ms. Faulkner's second issue challenges the entry of summary judgment in Nationstar's favor. As developed by argument, this issue specifically focuses[5] on the

---

[4] This observation is also meaningful as it relates to another of Ms. Faulkner's arguments, i.e., that adverse credit action evidence is relevant to "prov[ing] the Fraud" in her fraudulent conversion claim. Nationstar aptly notes that Ms. Faulkner, by her argument, actually "appear[s] to acknowledge that this evidence has nothing to do with any alleged conversion" itself.

[5] We observe that a passing reference is made in Ms. Faulkner's brief to the notion that "none of the causes of action were properly dismissed." No record citation is provided in reference to this isolated statement, and we also note that "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). We consider the summary judgment issue waived to the extent that it attempts to address anything other than allegations of wrongful foreclosure. Notably, and

dismissal of her allegations concerning wrongful foreclosure. Initially, Ms. Faulkner appears to partially argue in passing that such allegations are supportable as a contract claim. Indeed, as Nationstar notes, Ms. Faulkner's brief states at one point that the "Wrongful Foreclosure is the Breach of Contract." Of course, as we have already pointed out, once Ms. Faulkner made clear in the trial court that she wanted to recover emotional and punitive damages for her allegations of wrongful foreclosure, she expressly argued that she was "proceeding under Wrongful Foreclosure as a tortious injury to property" and that a three-year statute of limitations applied to this claim. To the extent that she attempts, in part, to take a different position on appeal, her efforts are without merit. *See, e.g.*, *Lowe v. Smith*, No. M2015-02472-COA-R3-CV, 2016 WL 5210874, at *13 (Tenn. Ct. App. Sept. 19, 2016) (noting that it is inappropriate to allow a party to take one position regarding an issue in the trial court and then change strategy or theory in midstream and advocate a different ground or reason on appeal).

Regarding the trial court's order concluding that Ms. Faulkner's wrongful foreclosure claim was time-barred by the three-year limitation period she agreed was operative, we discern no error. Inasmuch as Ms. Faulkner is complaining about the inclusion of her home in a bulk sale, there are multiple facts signaling that the Faulkners were put on notice more than three years prior to the commencement of litigation on December 23, 2014. As previously discussed in this Opinion, the Faulkners witnessed a man installing a sign in their yard in October 2011. After the Faulkners inquired into the situation, the man then handed them a document indicating that their home was no longer owned by them. The Faulkners then later received a stack of papers indicating that they did not own the property. The Faulkners' daughter also called Nationstar in October 2011 and heard someone state during the call that her parents' home had been inadvertently sold. Following this discovery, the Faulkners filed a consumer complaint with the Tennessee Department of Financial Institutions on December 15, 2011.

*Emotional Damages Issue*

Ms. Faulkner's final issue on appeal asks whether the trial court erred "when it excluded emotional damages." Respectfully, the briefing submitted on this issue lacks clarity concerning the specific error upon which the appeal is based.[6] Indeed, the accompanying argument devoted to the issue contains no citation to the record corresponding to any action of the trial court.[7] Under Rule 27(a) of the Tennessee Rules of Appellate Procedure, a brief's included argument must not only reflect the "contentions

---

unsurprisingly given the substance of Ms. Faulkner's brief, that is the only subject Nationstar has responded to on this issue on appeal.

[6] Nationstar's brief also criticizes the adequacy of the briefing on this issue, specifically arguing that Ms. Faulkner waived her issue due to a "complete failure . . . to provide any facts" to complete the argument.

[7] The only citation to the record is to a pre-trial memorandum filed by Ms. Faulkner.

of the appellant with respect to the issues presented, and the reasons therefor," it must also include "citations to the authorities and appropriate references to the record . . . relied on." Tenn. R. App. P. 27(a)(7). This Court's rules also provide for certain appellate briefing requirements. Specifically, Rule 6 of the Rules of the Court of Appeals of Tennessee provides in pertinent part as follows:

> **(a)** Written argument in regard to each issue on appeal shall contain:
>
> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with **citation to the record where the erroneous or corrective action is recorded**.
>
> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
> (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
>
> (4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.
>
> **(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded**. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. Ct. App. R. 6 (emphases added). Ms. Faulkner's failure to achieve compliance with these rules in her argument frustrates our ability to ascertain the nature of her concern.

Further uncertainty as to the nature of Ms. Faulkner's grievance results from the standard of review she cites in reference to this issue. Although the phrasing of her issue would, at first glance, perhaps suggest that Ms. Faulkner takes issue with some evidentiary decision in reference to the trial, she does not propose that the issue be reviewed under an abuse of discretion standard, the standard governing a trial court's evidentiary decisions. *See Allen*, 476 S.W.3d at 377 ("We review a trial court's decision to admit or exclude evidence, including a ruling following a motion in limine, under the abuse of discretion standard of review."). Rather, Ms. Faulkner proposes that her issue be reviewed "de novo," somewhat confusingly referencing both the standard of review accompanying summary judgment decisions and the standard accompanying a review of a trial court's

factual findings.  Given the lack of appropriate citation to the record concerning the nature of Ms. Faulkner's challenge and the lack of clarity in her argument, we deem this issue to be waived.[8]

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed.


        s/ Arnold B. Goldin        
ARNOLD B. GOLDIN, JUDGE

---

[8]Even assuming that we ignored the briefing deficiencies that exist and proceeded to speculate, based on the cited pre-trial memorandum excerpt, that Ms. Faulkner's final issue attempts to establish that emotional damages should be available for her wrongful foreclosure claim, such a concern would be pretermitted in light of our conclusion herein that the wrongful foreclosure claim was appropriately dismissed as time-barred.