# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 15, 2011 Session

## LEON DICKSON, SR. v. SIDNEY H. KRIGER, M.D.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005591-04      James F. Russell, Judge**

---

**No. W2011-00379-COA-R9-CV - Filed February 10, 2012**

---

This appeal arises from injuries Plaintiff sustained after undergoing laser corrective eye surgery. Plaintiff filed a complaint against Defendant alleging medical negligence. Subsequently, Defendant filed an amended answer alleging, *inter alia*, the affirmative defense of comparative fault. Plaintiff filed a motion to strike portions of Defendant's amended answer, and following a hearing on the motion, Defendant agreed to the entry of a consent order waiving the defense of comparative fault. Thereafter, Plaintiff filed motions in limine to preclude the testimony of two of Defendant's experts. Plaintiff argued that, because Defendant waived comparative fault, he could not use the causation testimony of the two experts to shift blame away from himself unless he first plead comparative fault under Rule 8.03 of the Tennessee Rules of Civil Procedure. The trial court denied both motions. We granted permission for interlocutory appeal. We affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 9 Appeal by Permission; Judgment of the Circuit Court Affirmed in part, Reversed in Part and Remanded.**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Robert L. Green and Darryl D. Gresham, Memphis, Tennessee, for the appellant, Leon Dickson, Sr.

David M. Cook and Virginia P. Bozeman, Memphis, Tennessee, for the appellee, Sidney H. Kriger, M.D.

**OPINION**

## I. Background and Procedural History

In May 2003, Sidney H. Kriger, M.D. ("Dr. Kriger") performed laser corrective eye surgery, commonly referred to as LASIK, on Leon Dickson ("Mr. Dickson"). Following the procedure, Mr. Dickson experienced vision problems in his left eye, and later discovered that he suffered from an inferior temporal decentered ablation of his cornea.[1] Subsequently, on September 27, 2004, Mr. Dickson filed a complaint against Dr. Kriger in Shelby County Circuit Court alleging medical negligence.

During the pendency of the litigation, the trial court entered an order granting Dr. Kriger's motion for a physical examination of Mr. Dickson by Marc A. Michelson, M.D. ("Dr. Michelson"). Dr. Michelson opined that the decentered ablation could have been caused by "surgeon error" or "machine error." On June 14, 2007, Dr. Kriger was granted permission to file an amended answer which added, *inter alia*, the affirmative defense of comparative fault. In response, Mr. Dickson filed a motion to strike the amended answer for failure to adequately identify non-parties as required when asserting comparative fault. After a hearing on the motion, Dr. Kriger agreed to the entry of a consent order waiving the affirmative defense of comparative fault.

On August 17, 2007, Dr. Kriger took the deposition of Dr. Michelson, and he testified that the decentered ablation was caused by a malfunction of the laser machine. Thereafter, on August 28, 2007, Dr. Kriger took the deposition of James C. Loden, M.D. ("Dr. Loden"). Dr. Loden testified that Mr. Dickson did not fixate on the blinking red light properly during surgery, thus resulting in the decentered ablation of his left eye. On cross-examination, counsel for Mr. Dickson asked Dr. Loden if he was of the opinion that Plaintiff was at fault for the decentered ablation, to which Dr. Loden agreed.

On August 6, 2008, Mr. Dickson filed a motion in limine to preclude the testimony of Dr. Michelson, and on October 7, 2008, filed a motion in limine to preclude the testimony of Dr. Loden. Mr. Dickson argued that, because Dr. Kriger agreed to waive the defense of comparative fault, Dr. Kriger could not use the causation testimony of Dr. Michelson and Dr. Loden to shift fault away from himself. Dr. Kriger argued that this testimony was relevant evidence of causation, and did not tend to establish Mr. Dickson or the laser manufacturer as tortfeasors. After conducting a hearing, the trial court entered an order denying both of

---

[1]A "decentered ablation" occurs when the area reshaped by the laser is not centered to the eye's visual axis. This results in a variety of vision problems including glares, halos, ghost images, and blurred vision.

Mr. Dickson's motions on January 14, 2011. The trial court further ordered that portions of Dr. Loden's testimony on cross-examination be redacted from the deposition because Dr. Loden was not asked about and did not testify about fault on direct examination. The trial court emphasized that it was counsel for Mr. Dickson who introduced the issue of fault on cross-examination.

On February 8, 2011, the trial court entered an order granting Mr. Dickson's motion for permission to file an interlocutory appeal regarding the denial of his motions in limine to preclude the testimony of Dr. Michelson and Dr. Loden. Additionally, the trial court granted Dr. Kriger leave to further amend his answer to set forth his causation defense with greater specificity. On May 18, 2011, this Court granted Mr. Dickson's application for interlocutory appeal.

## II. Discussion

## A. Waiver

We begin our discussion by addressing Dr. Kriger's argument that Mr. Dickson waived his objections to the admissibility of Dr. Loden's and Dr. Michelson's causation testimony by failing to raise them during the course of the depositions. Given that these depositions were taken for evidentiary purposes, the parties stipulated that the depositions would proceed "according to the Tennessee rules." As such, our analysis is guided by the Tennessee Rules of Civil Procedure. In general, Rule 32.04 of the Tennessee Rules of Civil Procedure provides that a party waives any objections to defects in the taking of a deposition unless those objections are promptly raised. *See* Tenn. R. Civ. P. 32.04.[2] An exception to this general rule, however, provides:

> Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

Tenn. R. Civ. P. 32.04(3)(A).[3] We note that Dr. Kriger does not allege which specific

---

[2]We note, however, that "[i]t is common practice in Tennessee and in many other jurisdictions for the attorneys at a deposition to stipulate that all objections except as 'to the form of the question' are reserved," Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 8-7[k], at 8–113 (3d ed. 2009), thus often making Rule 32.04 inapplicable.

[3]"This provision avoids burdening the deposition with a number of objections. These objections as
(continued...)

objections Mr. Dickson waived. It is our opinion, however, that Mr. Dickson did not waive any objections to the causation testimony that could have been raised at the time. Since Dr. Kriger waived the defense of comparative fault, any proof that showed someone other than Dr. Kriger caused or contributed to Mr. Dickson's injuries would be irrelevant. During the depositions, however, the ground for a relevance objection regarding Dr. Loden's or Dr. Michelson's causation testimony could not have been obviated or removed if Mr. Dickson presented it at that time. Therefore, Mr. Dickson did not waive his objections to Dr. Loden's or Dr. Michelson's causation testimony.

## B. Causation Evidence

The remaining issue presented on appeal, as we perceive it, is whether the trial court erred in denying Mr. Dickson's motions in limine to preclude the testimony of Dr. Loden and Dr. Michelson, where Dr. Kriger waived the defense of comparative fault, and subsequently offered the causation testimony as proof that Mr. Dickson's injury resulted from either a malfunction of the laser machine or Mr. Dickson's loss of focus on the red light during the LASIK procedure. We review a trial court's decision regarding the admissibility of evidence, including a ruling on a motion in limine, under an abuse of discretion standard. *Pullum v. Robinette*, 174 S.W.3d 124, 137 (Tenn. Ct. App. 2004) (citing *Heath v. Memphis Radiological Prof'l Corp.*, 79 S.W.3d 550, 558-59 (Tenn. Ct. App. 2002)). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

On appeal, Mr. Dickson argues that the trial court erred in denying his motions in limine because the causation testimony offered by Dr. Kriger effectively shifts the blame to Mr. Dickson or the manufacturer of the laser machine without pleading comparative fault in compliance with Rule 8.03 of the Tennessee Rules of Civil Procedure.[4] In response, Dr.

---

[3](...continued)
to defects that could not have been avoided in any event may be made at the trial when and if the deposition is offered." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2153 (3d ed. 2011) (discussing the practically identical provision in the Federal Rules of Civil Procedure, on which Rule 32.04 was based).

[4]Rule 8.03 of the Tennessee Rules of Civil Procedure provides in part that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . comparative fault (including the identity or description of any other alleged tortfeasors) . . . ." Further,
(continued...)

Kriger argues that he does not seek to establish that either Mr. Dickson or the manufacturer of the laser machine were negligent or legally at fault. Instead, Dr. Kriger alleges that Dr. Loden's and Dr. Michelson's testimony shows that Mr. Dickson or the malfunction of the laser machine was the cause in fact of Mr. Dickson's injury, that Mr. Dickson's injury resulted from recognized risks that occur during LASIK procedures, and that Mr. Dickson was adequately informed of these risks. Dr. Kriger further argues that, without the introduction of this causation evidence, he would be deprived of the opportunity to fully present the relevant sequence of events that resulted in Mr. Dickson's injury.

In support of his position, Mr. Dickson relies on *George v. Alexander*, 931 S.W.2d 517 (Tenn. 1996). In *George*, the plaintiff filed a medical malpractice action against two physicians, Dr. Phillip Jones and Dr. Clyde Alexander, alleging that they negligently administered spinal anesthesia prior to her surgery. *Id.* at 519. The defendants filed an answer denying any negligence, and never amended their answer to include the defense of comparative fault. *Id.* Thereafter, the plaintiff took the deposition of Dr. Vaughn Allen, who opined that plaintiff's injury was likely caused by the improper positioning of the plaintiff during surgery by Dr. James Daniell, and not by the administration of spinal anesthesia. *Id.* at 519-20. At trial, the defendants sought to introduce Dr. Allen's videotaped deposition to establish that the improper positioning of plaintiff's body during surgery was the cause in fact of plaintiff's injury. *Id.* at 520. The plaintiff argued that Rule 8.03 required the defendants to plead comparative fault as a defense if they intended on shifting the blame to Dr. Daniell. *Id.* The defendants responded, and the trial court agreed, that they did not have to plead comparative fault because they only intended to show that Dr. Daniell was the cause in fact, and not the proximate cause, of plaintiff's injury. *Id.* at 521.

On appeal, the Supreme Court was presented with the following issue, "whether a defendant in a negligence case must, pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure, plead comparative fault as an affirmative defense if the defendant wishes to introduce evidence that a person other than itself caused the plaintiff's injury." *Id.* at 518. The Court concluded:

> While the defendants' position seems plausible at first blush, its assumption that proof of proximate cause is necessary to "shift the blame" to another is unfounded. Since proximate cause is actually just a policy decision

---

[4](...continued)
the Advisory Commission Comment to the 1993 Amendment provides that "'[c]omparative fault' is substituted for 'contributory negligence' in light of *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992). Note that the defendant must identify or describe other alleged tortfeasors who should share fault, or else the defendant normally would be barred from shifting blame to others at trial."

of the judiciary to "deny liability for otherwise actionable causes of harm," the defendants' position ignores the fact that "blame-shifting" in a negligence context actually has to do with the element of causation in fact. Once the defendant introduces evidence that another person's conduct fits this element, it has effectively shifted the blame to that person. Therefore, if the defendants' position were to be accepted, any defendant wishing to transfer blame to another person at trial could always maintain that it is not trying to show that the other's conduct satisfies the legal definition of negligence, but that it is merely trying to establish that the other person's conduct actually caused the injury. In the latter situation, however, the defendant has fully accomplished what Rule 8.03 was intended to prevent: it has effectively shifted the blame to another person without giving the plaintiff notice of its intent to do so. Therefore, the purpose of Rule 8.03 would be undermined to a substantial degree if the defendants' overly technical argument were to prevail.

*Id.* at 521 (internal citations omitted). With regard to the defendants' argument that the plaintiff was not prejudiced by their failure to raise comparative fault as an affirmative defense because the plaintiff was aware of the possibility that Dr. Daniell's improper positioning caused the injury, the Court stated:

We decline to accept this "harmless error" argument. Rule 8.03 is a prophylactic rule of procedure that must be strictly adhered to if it is to achieve its purposes. It is designed to obviate the need for appellate courts to look into the record for actual prejudice each time a defendant introduces proof at trial of an unpleaded defense. To accept the defendants' argument on this point would invite evasion of a clearly-stated rule of procedure that is crucial to the equitable and efficient administration of a comparative fault system.

*Id.* at 522.

Justice Reid filed a separate concurrence that disagreed with the majority and accepted the defendants' argument that proximate cause was necessary for blame-shifting. *Id.* at 526. Justice Reid further stated:

Relevant evidence of causation which does not tend to establish nonparties as tortfeasors is admissible under a general denial. However, a defendant's evidence which, as in this case, tends to show no causation in fact by the defendant is inadmissible if it also shows that a nonparty was negligent and that the nonparty's negligence was the proximate cause of the plaintiff's damages. In the present case, the defendants relied heavily upon Dr. Allen's

testimony that the patient was improperly positioned for surgery and that improper positioning was the cause of the injuries. Rule 8.03 requires that if those facts are to be relied upon, they must be set forth in the pleadings in "short and plain terms." Otherwise, testimony regarding those facts is not admissible.

*Id.* at 527. Following Justice Reid's concurrence, the trial court in the case at bar reasoned that Dr. Loden's and Dr. Michelson's testimony was relevant evidence of causation that did not establish Mr. Dickson or the laser manufacturer as tortfeasors, and as such, denied Mr. Dickson's motions in limine. We will address the trial court's rulings on each motion in turn.

### 1. Dr. Michelson's Testimony

During his deposition, regarding the outcome of Mr. Dickson's LASIK procedure, Dr. Michelson testified as follows:

Q.     And let me ask you, because you discussed possible causes, or you have [a] slide show, and you've shown us the surface of the cornea and how the laser apparently effected some parts of it and not others. Have you reached any conclusions as to what happened in this case, why there was an outcome that was not desirable?

A.     I would propose that the laser beam itself did not come down in a homogenous fashion.

Q.     Homogenous meaning?

A.     Smooth and equal energy in all areas.

Q.     Pardon the interruption. Go ahead.

A.     I think the energy of the laser was concentrated on one side of the beam, and it was hotter on one side and cooler on the other. This is ultraviolet laser radiation. It is invisible. You cannot see it. There is no way to measure it. Once you initiate the treatment of a laser, you have to accept what that laser is giving you. I don't think the flap hindered the treatment. I think that there was probably a malfunction of the laser.

On cross-examination, Dr. Michelson further testified as follows:

Q. Doctor, let me ask you one other question.

A. Sure.

Q. As I understand you're saying that you think there was some malfunction of the laser.

A. I think there's a high probability that that occurred.

Q. Well, I don't know exactly what high probability means, but are you saying that that's, in your judgment that's what happened?

A. Yes.

After reviewing the record, we find no error in the trial court's determination regarding Dr. Michelson. The testimony above merely provides Dr. Michelson's opinion that the laser machine likely malfunctioned during the LASIK procedure. The evidence does not tend to establish that the conduct of the laser manufacturer fit any element of Mr. Dickson's cause of action. Instead, Dr. Michelson's testimony was offered as part of Dr. Kriger's defense that, in the absence of any deviation from the standard of care, these types of risks can and do occur during LASIK procedures.[5] Therefore, Dr. Kriger was not required to plead the comparative fault of the laser manufacturer under Rule 8.03 before offering Dr. Michelson's testimony as part of his defense. Accordingly, we affirm the trial court's decision denying Mr. Dickson's motion in limine to preclude the testimony of Dr. Michelson.

### 2. Dr. Loden's Testimony

At the deposition of Dr. Loden, when asked to explain what occurs during a typical LASIK procedure, he testified as follows:

A. Part of the instruction is, is that the patient is totally awake. You have to realize the patient is awake and is an active participant in laser vision correction surgery. It is the patient's job to fixate on the blinking red light. Whether the eye tracker works or not, you can still have

---

[5]We want to emphasize, however, that any alleged malfunction of the laser machine during the procedure does not automatically immunize Dr. Kriger from liability. The defense set forth by Dr. Kriger remains an "all or nothing" defense. As such, a reasonable jury could still conclude that Dr. Kriger negligently maintained or operated the laser machine, or that he failed to adequately inform Mr. Dickson of the risk that the laser machine could malfunction during the procedure.

decentrated – decenter treatments even with a perfectly-functioning eye tracker if the patient does not look at the blinking red fixation light properly.

And I feel like in this particular case that it is a very important point to make.

. . . .

Q.     What sort of outcome would you characterize that Dr. – that Mr. Dickson got, excuse me?

A.     My feeling is looking at all the topographic maps that had been performed post-operatively is it's very obvious that the patient has had a inferior temporally decentered ablation.

Q.     Would you translate that into lay terms, please?

A.     Into layman's terms, what I feel like occurred is that the laser beam did not hit perfectly in the center of the pupil, more than likely due to the patient not fixating on the light properly during surgery.

When ruling on Mr. Dickson's motion in limine to preclude the testimony of Dr. Loden, the trial court emphasized that it was counsel for Mr. Dickson who introduced the issue of fault on cross-examination, and instead of excluding all of the causation testimony, the trial court chose to redact the following portion of the deposition:

Q.     So its his patient error?

A.     That is my opinion, yes.

Q.     It's Mr. Dickson's own fault that he has –

A.     Yes, sir.

Q.     – the problems he's got?

A.     Yes, absolutely.

. . . .

Q.     Are you suggesting that he's malingering?

A.     No, I'm not.

Q.     But you are definitely stating that his own – it is his own fault that he has a decentered ablation?

A.     Yes.

. . . .

Q.     And your testimony, as I understand it –

A.     Yes.

Q.     – is that Mr. Dickson's failure to keep his eye on the red light is what caused his problem.  It's solely his fault that he has the decentered ablation.

A.     Yes, sir.

Although the trial court redacted the testimony above, the following portions of the cross-examination of Dr. Loden remain in the record:

Q.     And do I understand – and correct me if I'm wrong, but here's what I'm understanding that you have testified –

A.     Yes.

Q.     – that the decentered ablation in Mr. Dickson's left eye is because he did not keep proper fixation on the red light?

A.     That is correct.

. . . .

Q.     Not the laser itself, not the doctor?

A.     Correct.

In light of the forgoing, we disagree with the trial court that Dr. Loden's testimony does not tend to shift the blame from Dr. Kriger to Mr. Dickson. In addition to denying Mr. Dickson's motions in limine, the trial court granted Dr. Kriger leave to further amend his answer to assert his causation defense with greater specificity. Dr. Kriger's amended answer states that Mr. Dickson's injury was "the result of . . . Mr. Dickson's loss of focus on the blinking red light . . ." during the LASIK procedure. The use of Dr. Loden's causation testimony, coupled with Dr. Kriger's amended answer, effectively shifts the blame to Mr. Dickson as the cause of his own injury. If Dr. Kriger wishes to advance the argument that Mr. Dickson caused or contributed to his own injury by failing to maintain focus on the blinking red light during the LASIK procedure, then he must first affirmatively plead comparative fault under Rule 8.03. *George v. Alexander*, 931 S.W.2d 517, 521 (Tenn. 1996).

Although, as noted above, rulings on motions in limine are within the discretion of the trial court, "[d]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (quoting Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. App. Prac. & Process 47, 58 (2000) (citations and internal quotation marks omitted)). An abuse of discretion may be found "when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination." *Id.* (quoting 2 J. App. Prac. & Process at 59) (internal quotation marks omitted)). In *George*, the Supreme Court clearly established that "Rule 8.03 is a prophylactic rule of procedure that must be strictly adhered to if it is to achieve its purposes." *George*, 931 S.W.2d at 522. As such, to allow Dr. Kriger to proceed with his defense without pleading the comparative fault of Mr. Dickson "would invite evasion of a clearly-stated rule of procedure that is crucial to the equitable and efficient administration of a comparative fault system." *Id.* Therefore, we reverse the trial court's decision denying Mr. Dickson's motion in limine to preclude the testimony of Dr. Loden.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's order denying the motion in limine to preclude the testimony of Dr. Michelson, and reverse the trial court's order denying the motion in limine to preclude the testimony of Dr. Loden. This matter is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed equally to the Appellant, Mr. Dickson and his surety, and the Appellee, Dr. Kriger.

_____

DAVID R. FARMER, JUDGE