IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 7, 2024 Session

## JOHN DOE v. JANE ROE

**Appeal from the Circuit Court for Davidson County**
**No. 20C795     Thomas W. Brothers, Judge**

_____

**No. M2023-00045-COA-R3-CV**

_____

This appeal arises out of the partial denial of a Tennessee Public Participation Act ("TPPA") petition filed by the Appellant/Defendant, Jane Roe ("Roe").[1]  This case was previously before this Court after Roe appealed the trial court's determination that the TPPA was not applicable to the claims of Appellee/Plaintiff, John Doe ("Doe").  In the first appeal, this Court found that Roe's filing of a Title IX complaint fell within the scope of the TPPA and remanded the case back to the trial court.  On remand, the trial court granted in part and denied in part Roe's TPPA petition.  Roe now appeals the trial court's partial denial on remand.  Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JEFFREY USMAN, J., joined.

John J. Griffin, Jr. and Michael A. Johnson, Nashville, Tennessee, and David T. Hooper, Brentwood, Tennessee, for the appellant, Jane Roe.

Michelle Owens, Nashville, Tennessee, for the appellee, John Doe.

### OPINION

#### BACKGROUND

This is the second time these parties have been before this Court on appeal.  As this Court explained in *Doe I*:

_____

[1] Both parties have been identified pseudonymously throughout these proceedings.

The facts giving rise to this appeal are largely in dispute and are a matter of great contention between the parties. [Doe and Roe] were acquaintances prior to the events giving rise to this appeal. At the time of the alleged incident, both parties were students at Middle Tennessee State University ("MTSU") in Murfreesboro, Tennessee. On November 30, 2018, Roe met up with Doe. Roe alleges that Doe sexually assaulted her later that night, which Doe disputes. At varying times after the incident, Roe informed friends and family of the assault, including a professor at MTSU. On December 5, 2019, Roe filed a complaint with MTSU's Title IX office. The Title IX office later completed its investigation, finding that there was a lack of evidence to proceed further, specifically noting that "the proof does not show that it was more likely than not" that a Title IX violation occurred.

Doe ultimately filed a complaint in the Davidson County Circuit Court ("the trial court") against Roe for defamation, false light invasion of privacy, and intentional infliction of emotional distress. Specifically, Doe based his claims on Roe's Title IX complaint as well as her purported communications regarding the incident with friends and family and on social media. In response to Doe's complaint, Roe filed a motion to dismiss [(the "TPPA petition")], arguing that her activity was protected under the [TPPA]. Roe's motion was specifically filed pursuant to the authority in Tennessee Code Annotated section 20-17-104(a), which provides that "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action." Tenn. Code Ann. § 20-17-104(a). Following a hearing, the trial court denied Roe's motion, finding that the matter was not one of public concern such as to warrant the application of the TPPA. . . .

*Doe v. Roe*, 638 S.W.3d 614, 615–16 (Tenn. Ct. App. 2021) (footnote omitted) ("*Doe I*"). Roe also filed a Rule 12 motion to dismiss, which the trial court denied. Roe did not appeal the denial of her Rule 12 motion but appealed the denial of her TPPA petition, raising only one issue before this Court: "Whether the trial court erred in holding that the [TPPA] does not apply to the report of an alleged crime to a government entity." *Id.* at 616–17. This Court "reverse[d] the trial court's finding that the TPPA is not applicable to Roe's filing of a complaint with MTSU's Title IX office" and "remand[ed] . . . for a determination regarding whether there is a prima facie case for Doe's claims against Roe insofar as they pertain to her Title IX complaint pursuant to [Tenn. Code Ann. §] 20-17-105(b)." *Id.* at 624.

Following a hearing on the TPPA petition on remand, the trial court entered a Memorandum Order on December 15, 2022. Given the narrow constraint of this Court's remand in *Doe I*, the trial court found that its original order denying Roe's TPPA petition

remained in effect "except to the extent that [Doe]'s claims are concerned with [Roe]'s Title IX complaint." Accordingly, the trial court only analyzed Doe's claims arising out of the Title IX complaint. The trial court granted the TPPA petition with respect to Doe's false light invasion of privacy ("false light") and intentional infliction of emotional distress ("IIED") claims arising out of the Title IX complaint, resulting in a dismissal of those claims. Doe does not appeal this decision. However, the trial court denied the TPPA petition with respect to Doe's defamation claim arising out of the Title IX complaint, finding that Doe satisfied the requirements of section 20-17-105(b). Roe attempted to raise two defenses to overcome Doe's prima facie case – the common interest privilege and the public interest privilege – but the trial court found that neither of these defenses apply "under the circumstances for which [Doe] has made a prima facie case." Finally, the trial court expressly stated: "Nothing in this Order shall be construed to dismiss any of [Doe]'s claims to the extent that they are not based on [Roe]'s Title IX complaint."

This timely appeal followed.

## ISSUES

Roe presents the following issues:

1.      Whether the trial court erred in failing to grant [Roe]'s [TPPA] petition with respect to claims on which [Doe] failed to make a prima facie case?

2.      Whether the trial court erred in failing to grant [Roe]'s TPPA petition where [Roe] established one or more defenses to [Doe]'s claims?

3.      Whether the trial court erred in considering inadmissible evidence in ruling on [Roe]'s TPPA Petition where [Doe] failed to authenticate his evidence and relied on otherwise inadmissible evidence, such as hearsay?

4.      Whether the trial court erred in failing to grant[] [Roe]'s Rule 54.02 Motion after the first appeal of this case . . .?

## DISCUSSION

### *A.*

On remand to the trial court following this Court's decision in *Doe I*, Roe filed a Motion to Alter or Amend pursuant to Tennessee Rule of Civil Procedure 54.02 requesting that the trial court set aside its original order denying the TPPA petition. Roe averred that prior to *Doe I*, both parties fully briefed the applicability of the TPPA and the question of whether Doe had made a prima facie showing on each element of his claims. Roe argued

that she would be prejudiced if Doe were granted "a second bite at the apple" in the form of another round of briefing and a second hearing, though she did not specify how she would be prejudiced. Doe opposed the Rule 54.02 motion, requested leave to conduct discovery,[2] and asked the trial court to set the TPPA petition for a hearing. Roe's motion was heard on February 11, 2022; however, there is no transcript of this hearing in the record. On February 18, 2022, the trial court entered an order denying the motion but did not provide any reasoning for its decision. It also granted Doe leave to conduct limited discovery. On appeal, Roe argues that the trial court erred in denying her Rule 54.02 motion.

Like motions made pursuant to Tennessee Rules of Civil Procedure 59 and 60, motions made pursuant to Rule 54.02 are reviewed under an abuse of discretion standard. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). "A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). "Indeed, when reviewing a discretionary decision by the trial court, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision.'" *Id.* (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

The TPPA permits "specified and limited discovery relevant to the [TPPA] petition upon a showing of good cause." Tenn. Code Ann. § 20-17-104(d). The TPPA does not define "good cause" in this context, nor have the courts of this state. On remand, Doe argued that it was necessary for him to conduct limited discovery because he "[did] not have even what MTSU has, in regard to evidence; it is tightly managed and concealed by the university." Following the hearing on Roe's Rule 54.02 motion, the trial court granted Doe's motion for limited discovery. Specifically, it permitted him to "subpoena [MTSU] for all Title IX filings and/or documents that deal with the Title IX case between [the parties]" and to "subpoena [MTSU] Police Department for any statements made specifically by [] Roe that are in their possession." Given Doe's explanation for his need for limited discovery and the procedural posture of this matter on remand, we conclude that the trial court did not abuse its discretion in denying Roe's Rule 54.02 motion and allowing Doe to conduct limited discovery.

---

[2] The filing of a TPPA petition stays all discovery in the legal action. Tenn. Code Ann. § 20-17--104(d). "The stay of discovery remains in effect until the entry of an order ruling on the petition." *Id*. "The court may allow specified and limited discovery relevant to the petition upon a showing of good cause." *Id*.

- 4 -

This case requires us to construe the TPPA. "[W]hen an issue on appeal requires statutory interpretation, we review the trial court's decision de novo with no presumption of correctness." *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas and Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018) (citing *Wade v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 58 (Tenn. Ct. App. 2015)). When deciding a TPPA petition, a trial court "may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties." Tenn. Code Ann. § 20-17-105(d). In other words, any evidence considered by the trial court when analyzing the burden-shifting framework set forth in section 20-17-105(a)–(c) must be admissible. *See Charles v. McQueen*, No. M2021-00878-COA-R3-CV, 2022 WL 4490980, at *8 (Tenn. Ct. App. Sept. 28, 2022), *aff'd in part*, *rev'd in part on other grounds*, --- S.W.3d ----, 2024 WL 3286527 (Tenn. 2024). "We review a trial court's decision to admit or exclude evidence . . . under the abuse of discretion standard of review" set forth above. *Allen v. Albea*, 476 S.W.3d 366, 377 (Tenn. Ct. App. 2015) (citing *Dickson v. Kriger*, 374 S.W.3d 405, 408 (Tenn. Ct. App. 2012)).

Roe argues that Doe relied on unauthenticated and inadmissible evidence to satisfy his prima facie burden and that the trial court erred by relying on such evidence. However, the trial court found that specific statements in two affidavits executed and filed by Doe were sufficient to satisfy this burden. Specifically, the trial court cited to the following statements contained within Doe's affidavits:

> I never pushed [Roe], hit [Roe] or slapped [Roe]. I have made this very clear in all my interviews through the school. My witness, who rented the house, was also present in the home about 10 feet away from the door and never heard any slapping or hitting and testified to this with [the] Title IX department at MTSU.

> This is the first time [Roe] has stated I hit her and that I pushed her down to have sex. Previously, to the school, she only stated I slapped her buttocks, which I deny. I did not hit or slap or push [Roe] in any way. [Roe] has changed her story from what she told the university. Further, [Roe] never tried to push me off of her. We were very amicable and friendly during the whole encounter.

> I did not ejaculate with oral sex, so we started having vaginal sex with her on top again. We did this for a while, but because I had been drinking, I still could not ejaculate. We both got tired and she said she wanted to take a break,

so we did. At this point we laid in bed and talked and rested. Our conversation during this time was friendly and lighthearted.

During this break, [Roe] and I were very friendly toward each other and talked about our lives and school. [Roe] could have easily left at this time if she felt unsafe or wanted to leave. There was no indication that [Roe] wanted to leave at all.

[Roe] did not hit her head that I am aware of. Initially, she told the school investigator that she hit her head on the headboard. However, pictures proved that there was no headboard in that room. [Roe] then changed her story to say she hit her head on the wall. I deny she ever hit her head, if she did it was very incidental and could not have happened repeatedly.

After the break, which lasted a few minutes, we started kissing again and she started giving me oral sex again and got on top of me. After a few more minutes of intercourse with her on top, I ejaculated. I ejaculated with intercourse, not oral sex. I did not "yell" at [Roe] for not letting me ejaculate in her mouth, there is no way I could have done that in the position we were in. Again, this is new to [Roe]'s story. This is the first time she has stated this. She has never told the school I yelled at her.

Everything I told the University during the Title IX investigation was true to the best of my knowledge and memory. I am certain that I did not rape or sexually or physically assault Roe in any way whatsoever.

(Internal numbering omitted). Roe argues that Doe's affidavits are not admissible to the extent they "recount[], albeit not verbatim, various alleged statements of third parties" made to MTSU employees. Similarly, Roe argues that these statements are not admissible to the extent Doe relies on unauthenticated documents obtained by the parties from MTSU in making the statements. The only statements relied upon by the trial court to which this could arguably apply are:

My witness . . . never heard any slapping or hitting and testified to this with [the] Title IX department at MTSU.

. . . to the school, [Roe] only stated I slapped her buttocks, which I deny.

. . . [Roe] told the school investigator that she hit her head on the headboard. [Roe] then [said] she hit her head on the wall.

- 6 -

However, there is no indication in Doe's affidavit that he has relied upon any unauthenticated documents in making these statements. Accordingly, we conclude that the trial court did not abuse its discretion in considering these statements when determining whether Doe satisfied his prima facie burden. Moreover, as discussed below, these statements were not necessary to Doe satisfying his prima facie burden.

## *C.*

### *i.*

Under the TPPA burden-shifting framework, once a TPPA petitioner satisfies their burden to show that the TPPA is applicable to "a legal action" against them, *see* Tenn. Code Ann. § 20-17-105(a), the burden shifts to the TPPA respondent to "establish[] a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(b). Roe relies on this language to argue that Doe was required to establish a prima facie case for each of the claims in his Amended Complaint, including those not based on Roe's Title IX complaint. However, Roe's argument ignores this Court's prior mandate to the trial court regarding the scope of its inquiry on remand.

In *Doe I*, this Court explained:

> [W]e concern ourselves only with the portion of Doe's lawsuit that concerns Roe's complaint filed with MTSU's Title IX Office. At oral argument, Roe's counsel indicated that she was proceeding on all facets of Doe's complaint, which includes Roe's purported statements to friends and family, as well as those allegedly on social media, regarding the sexual assault allegations. However, upon a close examination of Roe's brief, we find no articulated issue or argument regarding those contentions that provide any indication that Roe is appealing those matters as well. . . . Although Roe may have attempted to broaden the scope of our inquiry at oral argument, it is well settled that oral argument is not a permissible way to extend review to issues not raised in briefing. . . . Accordingly, for the purposes of this Opinion, we will only address the TPPA's applicability as it concerns Roe's Title IX complaint.

*Doe*, 638 S.W.3d at 616 n.3. Ultimately, this Court remanded the matter to the trial court "for a determination regarding whether there is a prima facie case for Doe's claims against Roe *insofar as they pertain to her Title IX complaint* pursuant to [Tenn. Code Ann. §] 20-17-105(b)." *Id.* at 624 (emphasis added).

Trial courts must strictly comply with this Court's mandates and on remand "lack[] the power to enter any other judgment, or consider or determine any other issue, that is not

included in the direction for entry of judgment made by" this Court. *Raleigh Commons, Inc. v. SWH, LLC*, 580 S.W.3d 121, 129 (Tenn. Ct. App. 2018) (quoting *Silvey v. Silvey*, No. E2003-00586-COA-R3-CV, 2004 WL 508481, at *3 (Tenn. Ct. App. Mar. 16, 2004)). This Court was clear in its mandate in *Doe I*. The only claims the trial court had the authority to consider on remand were Doe's claims that pertain to Roe's Title IX complaint. Accordingly, the trial court did not err in failing to apply the TPPA burden-shifting framework to Doe's other claims on remand.

Specifically, Doe's claims pertaining to Roe's Title IX complaint were for defamation, false light, and IIED. On remand, the trial court found that Doe did not satisfy his burden set forth in section 20-17-105(b) as to his claims for false light and IIED and dismissed those claims. Doe does not appeal that dismissal. Accordingly, the only claim at issue in this appeal is Doe's defamation claim pertaining to Roe's Title IX complaint. As to that claim, Doe's First Amended Complaint avers:

55.    [] Roe made false allegations against Doe in bad faith and with malice. Roe made several comments to Doe that revealed her insecurities and her fear that Doe was not, or no longer, interested in pursuing any type of relationship with her.

56.    Roe was angry that she was being ignored by Doe and knew at the time that she made the Title IX charges against Doe that they were false and that she did not have any corroborating evidence of such allegations.[]

57.    MTSU investigated the claims made by Roe, and even under the preponderance of the evidence standard, and Title IX's somewhat incorrect definition of that standard,[] Doe was deemed not to have committed sexual assault or any other offense against Roe.

58.    Roe stated to MTSU that Doe "continued sexual contact after consent [for that contact] was withdrawn" all the while knowing that the statement was untrue and that under MTSU policy, it was Doe who was unable to consent to sexual activity and not Roe, because Roe was sober and Doe was intoxicated.

\* \* \*

60.    Roe made the false statement regarding Doe's actions with her sexually, either with full knowledge of the damage this false statement could do to Doe's career or with reckless disregard of the same.

- 8 -

61.     As a result of Roes false allegations, Doe's reputation has been permanently and irreparably damaged.

62.     Doe had to change his major in the event that he was unable to prove the allegations by Roe false and therefore would be unable to get a job as a pilot as a result.

63.     Based on the foregoing, [Roe] is liable to Doe for defamation.

64.     As a direct and proximate result of the above conduct, Doe sustained damages, including, without limitation, anxiety, depression, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

*ii.*

On remand, the burden shifted to Doe to establish a prima facie case for each essential element of his defamation claim discussed above. *See* Tenn. Code Ann. § 20-17-105(b). As our Highest Court has recently explained:

> To establish a "prima facie" case under the TPPA, a party must present enough evidence to allow the jury to rule in his favor on that issue. . . . As is the case when a court rules on a motion for summary judgment or motion for directed verdict, the court should view the evidence in the light most favorable to the party seeking to establish the prima facie case and disregard countervailing evidence. *See, e.g., Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 284 (Tenn. 2005) (summary judgment); *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995) (directed verdict).

*Charles*, 2024 WL 3286527, at *13. "To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts § 580 B (1977); *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978)).

"Ordinarily, a plaintiff asserting a defamation claim must prove that the defendant made a false statement and did so negligently." *Charles*, 2024 WL 3286527, at *1. "If the plaintiff is a public figure, however, he must prove that the statement was made with actual malice." *Id*. Roe presents a skeletal argument that the actual malice standard also applies when the plaintiff is a private individual but the purported defamatory statement is about a matter of public concern. Even if this were the correct standard, Roe's contention that the trial court erred would still fail because Doe has made a prima facie case that Roe knew that her alleged defamatory statement was false and defaming to Doe, as discussed further below.

The trial court found that Doe established a prima facie case of defamation "with respect to the Title IX complaint[.]" Specifically, the trial court found:

> It is undisputed that [Roe] filed a Title IX complaint, so the first element is easily met. [Doe] has also established a prima facie case that [Roe] published her Title IX complaint with actual knowledge that the statements in the complaint were false by submitting affidavits in which he states that the sexual encounter was consensual and that the other behavior which [Roe] asserts he engaged in did not actually occur.

> This entire action arises from an event about which only [Doe] and [Roe] have any actual knowledge. While [Roe] has introduced evidence which could potentially call [Doe]'s credibility into question at trial, the [trial court] finds that [Doe]'s affidavits are sufficient at this point to establish a prima facie case that the sexual encounter referenced in the Title IX complaint was consensual and that therefore [Roe] had actual knowledge of her statement's falsity.

(Record citations omitted). As the trial court found, it is undisputed that Roe stated in her Title IX complaint that Doe "continued sexual contact [with Roe] after consent [for that contact] was withdrawn" by Roe.[3] Accordingly, this satisfies the first element of Doe's prima facie claim of defamation.

Doe satisfied the second element of his prima facie claim of defamation by showing that Roe published a false and defaming statement about him, which she knew was false, or with reckless disregard for the truth. The parties each filed two affidavits with the trial court. Roe's first affidavit states: "Before [Doe] started having sex with me again, I told him to stop several times. Still, he started to have sex with me again." Conversely, Doe's

---

[3] The parties also discuss alleged statements that Doe "slapped [Roe's] buttocks" and that Roe "[h]it her head on a headboard." However, the only allegedly defamatory statement set forth in Doe's Amended Complaint is the statement regarding Roe's alleged withdrawal of consent.

second affidavit states: "Roe never said 'stop' at any time during our sexual encounter on November 30, 2018. She did nothing that would in any way indicate she did not want to have sex or wanted to stop having sex." Roe argues that Doe's affidavit is not credible. She also insists that she genuinely believes that she withdrew consent and that whether she withdrew consent "is ultimately a subjective determination[.]"

"The issue of consent is a question resolved by the finder of fact." *State v. Williams*, No. W2018-00924-CCA-R3-CD, 2020 WL 211546, at *19 (Tenn. Crim. App. Jan. 14, 2020) (citing *Haynes v. State*, 540 S.W.2d 277, 278 (Tenn. Crim. App. 1976)). Moreover, when determining whether a party has established a prima facie case under the TPPA, "the court should view the evidence in the light most favorable to the party seeking to establish the prima facie case *and disregard countervailing evidence*." *Charles*, 2024 WL 3286527 at *13 (emphasis added). Accordingly, it is not our role to determine whether Roe actually withdrew consent, as that is ultimately a question for the factfinder. Instead, we must simply determine whether, when disregarding all countervailing evidence, Doe "present[ed] enough evidence to allow the jury to rule in his favor on that issue." *See id*. We conclude that he did, and the trial court did not err in holding that he satisfied his prima facie burden under section 20-17-105(b).

### D.

As the final step of the TPPA burden-shifting framework, once a TPPA respondent establishes a prima facie case for each essential element of their claim, the burden shifts back to the TPPA petitioner to "establish[] a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c). If the TPPA petitioner is able to establish such a defense, then the trial court must dismiss the legal action. *Id*. Roe argues that the statements in her Title IX complaint were protected by the public interest privilege and/or the common interest privilege. The trial court found that neither defense "would apply under the circumstances for which [Doe] has made a prima facie case."

The common interest and public interest privileges are both qualified or conditional privileges that are "recognized where the interest which the defendant is seeking to vindicate or further is regarded as sufficiently important to justify some latitude for making mistakes." *Pate v. Serv. Merch. Co.*, 959 S.W.2d 569, 575–76 (Tenn. Ct. App. 1996) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 115, at 825 (5th ed. 1988)). However, "a qualified or conditional privilege . . . may be defeated if the defamatory publication was made with malice, ill-will, or for an improper purpose." *Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 22 (Tenn. 2007) (citing *Pate*, 959 S.W.2d at 576–77). "Once privileged, the statement is presumed to have been made without malice, and the burden is on the plaintiff to prove express malice." *Pate*, 959 S.W.2d at 577 (citing *Langford v. Vanderbilt Univ.*, 318 S.W.2d 568, 576 (Tenn. Ct. App. 1958)).

- 11 -

As the trial court aptly noted, "[t]his entire action arises from an event about which only [Doe] and [Roe] have any actual knowledge." In this specific case, the factfinder will have to consider the admissible evidence presented by the parties and make a credibility determination that will reach the ultimate issue of whether Roe's statements in the Title IX complaint were false. This same credibility finding will be required before it can be determined whether the common interest privilege or public interest privilege apply to Roe's statements. Therefore, the trial court did not err in finding that at this juncture, Roe has not proven that the common interest privilege or the public interest privilege apply to this specific case.[4]

## CONCLUSION

The judgment of the Circuit Court for Davidson County is hereby affirmed. The costs of this appeal are taxed to the appellant, Jane Roe, for which execution may issue if necessary. This case is remanded for further proceedings consistent with this Opinion.

_____
KRISTI M. DAVIS, JUDGE

---

[4] Given this conclusion, it is not necessary for this Court to analyze whether the public interest and common interest privileges otherwise apply to the facts of this case, so we do not. We also note that no part of the TPPA analysis "[c]an result in findings or determinations that are admissible in evidence at any later stage of the underlying legal action or in any subsequent legal action[.]" Tenn. Code Ann. § 20-17-108(2).